UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
UNITED STATES OF AMERICA,     :
                              :    07-CR-400 (SJ)
             Plaintiff,       :
                              :
     v.                       :
                              :    June 15, 2007
LUIS H. YAURI,                :
                              :    Brooklyn, New York
             Defendant.       :
                              :
----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Government:          ROSLYNN R. MAUSKOPF, ESQ.
                             UNITED STATES ATTORNEY
                             BY:  BONNIE S. KLAPPER, ESQ.
                             ASSISTANT U.S. ATTORNEY
                             225 Cadman Plaza East
                             Brooklyn, New York  11201


For the Defendant:           MARIO MALERBA, ESQ.

Spanish Interpreter:         ESTRELLITA PLESTED

Audio Operator:


Court Transcriber:           ARIA TRANSCRIPTIONS
                             328 President Street, #3
                             Brooklyn, New York 11231
                             (718) 522-2335



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1        THE CLERK:  This is criminal cause for guilty

2   plea, United States of America versus Luis H. Yauri, SJ-07-

3   CR-400.  Counsel, your appearances for the record please.

4        MS. KLAPPER:  Good morning, your Honor.  Bonnie

5   Klapper for the United States.

6        MR. MALERBA:  Mario Malerba for the defendant.

7   Good morning, Judge.  How are you?

8        THE COURT:  Mr. Malerba, Ms. Klapper, how are you?

9        MR. MALERBA:  Good.

10        THE COURT:  We have Spanish interpreter Estrellita

11   Plested, previously sworn.  Mr. Yauri, are you understanding

12   everything as it's being translated into Spanish for you?

13        THE DEFENDANT:  Yes.

14        THE COURT:  Okay.  Ms. Klapper, I understand that

15   Mr. Yauri has already been arraigned on the charging

16   document and I therefore presume he is out on bail?

17        MS. KLAPPER:  Yes, your Honor.

18        MR. MALERBA:  That's correct.

19        THE COURT:  Thank you.  Mr. Yauri, the reason that

20   you're in Court today is that your lawyer indicates that you

21   wish to offer a plea of guilty pursuant to a written

22   agreement you've made with the prosecution.  Before I can

23   hear any guilty plea that you might choose to offer, I need

24   to be sure you understand that I'm not the judge who's

25   presiding over your case.

1          That's United States District Judge Johnson.

2   Judge Johnson is the one who's going to decide whether any

3   plea of guilty you do choose to offer should be accepted

4   and, if so, how your sentence should be determined.  If you

5   wish, you have the absolute right to present your plea of

6   guilty to Judge Johnson.  If that is your choice, there'll

7   no prejudice to you.  You will be permitted to plead guilty

8   before Judge Johnson on the same terms and conditions being

9   offered to you today but on another date that's more

10  convenient to him.

11          In the alternative, though, even though I'm a

12  magistrate judge and not a district judge like Judge Johnson

13  and, as a result, I do not have the legal authority to

14  formally accept your guilty plea or decide your sentence,

15  even though those things are true, I do have the authority

16  to be the judge who listens to your plea of guilty if I have

17  your consent and agreement to do that.

18          If you do agree to present your plea of guilty

19  before me, I will arrange for these proceedings to be

20  recorded on tape and for that recording to be transcribed so

21  that Judge Johnson has a written record of all things we've

22  said before he's called on to decide whether to accept your

23  plea or how to calculate your sentence.

24          Do you understand all of the things I've just told

25  you?

1          THE DEFENDANT:  Yes.

2          THE COURT:  I'm going to ask that Mr. Yauri stand

3     a little closer to the microphone so that the record we're

4     making includes a recording of his voice.  Thank you, Mr.

5     Malerba.

6          THE DEFENDANT:  Okay.

7          THE COURT:  Do you wish to give up your right to

8     have it be Judge Johnson who listens to your plea and do you

9     agree to proceed instead before me?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you make this decision voluntarily

12     and of your own free will?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Did you sign this form consenting to

15     present your guilty plea to me instead of Judge Johnson?

16          THE DEFENDANT:  Yes.

17          THE COURT:  Did you review the form with your

18     attorney and understand what you were signing before you

19     signed it?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Mr. Malerba, do you know of any reason

22     why your client should not consent to proceed before me for

23     these purposes?

24          MR. MALERBA:  There is no reason whatsoever,

25     Judge.

1          THE COURT:  I find the consent of the defendant

2    knowing and voluntary and I endorse the consent form to

3    reflect that finding.  Thank you, Mr. Malerba.

4          Mr. Yauri, before I can recommend to Judge Johnson

5    that he accept any guilty plea you choose to offer today,

6    I'm going to have to ask you a lot of questions.  The

7    questions are very important.  They are designed to help

8    make sure that you understand what a serious decision you

9    are about to make.  They are also designed, frankly, to

10   protect the prosecutor and the Court by creating a record

11   that will demonstrate that I explained your rights to you,

12   you told me you understood those rights and then you agreed

13   to give your rights up.  Once that happens, if you do decide

14   to offer a guilty plea, it will be legally valid and

15   permanently binding on you.

16         I am, therefore, urging you to listen very

17   carefully to my questions and if I ask you anything you

18   don't understand, I want you to stop me and tell me so I can

19   ask the question again and use different words and try to

20   make it clearer for you and if you wish to stop me at any

21   time because you want to ask me a question or because you

22   want to have a private conversation with Mr. Malerba, that's

23   fine, just tell me, I'll give you that chance.

24         Are we clear?

25         THE DEFENDANT:  Yes.

1    THE COURT:  It's very important you tell me the

2  truth today and for that reason I will direct that you be

3  sworn before we proceed.

4    (Defendant is sworn)

5    THE COURT:  Now that you have taken an oath -- you

6  can put your hand down now if you like -- now that you've

7  taken an oath, when you answer my questions, you're doing so

8  under penalties of perjury or making a false statement.

9  That means that if you lie to me during this proceeding, the

10  prosecutor may bring new charges against you just for that.

11    Do you understand me?

12    THE DEFENDANT:  Yes.

13    THE COURT:  Tell me your full name?

14    THE DEFENDANT:  Luis H. Yauri.

15    THE COURT:  How old are you?

16    THE DEFENDANT:  Thirty-five.

17    THE COURT:  How far did you go in school?

18    THE DEFENDANT:  Up to sixth.

19    THE COURT:  How old were you when you stopped

20  going to school?

21    THE DEFENDANT:  Twelve years old.

22    THE COURT:  Are you having any problem

23  understanding the Spanish translation of what I'm saying?

24    THE DEFENDANT:  No.

25    THE COURT:  Are you now or have you recently been

1   seeing a doctor, psychologist or any other health care

2   professional for any physical or mental problems?

3            THE DEFENDANT:  No.

4            THE COURT:  In the last 24 hours, Mr. Yauri, have

5   you taken any drugs or narcotics or pills or medicine or

6   alcohol?

7            THE DEFENDANT:  No.

8            THE COURT:  Have you ever in your life received

9   medical treatment for drug or alcohol abuse or psychiatric

10  problems?

11           THE DEFENDANT:  No.

12           THE COURT:  Is your mind clear today?

13           THE DEFENDANT:  Yes.

14           THE COURT:  Do you feel healthy and able to focus

15  and stay alert?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you understand all the things that

18  have happened here so far today?

19           THE DEFENDANT:  Yes.

20           THE COURT:  Mr. Malerba, have you had an

21  opportunity to discuss the matter of pleading guilty

22  carefully with your client?

23           MR. MALERBA:  Yes, Judge, we have.

24           THE COURT:  Does he, in your judgment, understand

25  the rights he'll be waiving if he offers a guilty plea?

1          MR. MALERBA:  Very much so.

2          THE COURT:  Is he capable of understanding the

3  nature of this proceeding?

4          MR. MALERBA:  Very much so.

5          THE COURT:  Do you have any doubt about his

6  competence to offer a guilty plea?

7          MR. MALERBA:  No doubt whatsoever.

8          THE COURT:  Have you alerted him to the maximum

9  sentence and fine that can be imposed, the likely operation

10  of the sentencing guidelines and their effect upon Judge

11  Johnson's discretion and the collateral consequences of

12  conviction?

13          MR. MALERBA:  We've discussed all of that, Judge.

14          THE COURT:  Thank you, Mr. Malerba.

15          Mr. Yauri, have you had enough time to review your

16  case carefully with your attorney and have you in fact done

17  so?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Now, I understand that you've retained

20  Mr. Malerba to defend you in this case.  Do you understand

21  that if you could not afford Mr. Malerba's services and you

22  showed that to the Court, I would appoint a lawyer to defend

23  you at no cost to you.  You should not plead guilty to save

24  money on legal fees.  If you can't afford an attorney, the

25  Court will appoint an attorney to defend you at no cost.

1          Do you understand?

2          THE DEFENDANT:  Yes.

3          THE COURT:  Are you satisfied to have Mr. Malerba

4     be the attorney defending you and do you want him as your

5     lawyer?

6          THE DEFENDANT:  Yes.

7          THE COURT:  Have you received a copy of the

8     indictment, the two-page written document, where the charge

9     against you is set forth in writing?

10         THE DEFENDANT:  Yes.

11         THE COURT:  Have you reviewed the indictment

12    carefully with your lawyer and have you done so with the aid

13    of a Spanish interpreter or in the Spanish language?

14         THE DEFENDANT:  Yes.

15         THE COURT:  Now, the indictment charges that

16    between September of 2003 and June of 2005, you and others

17    sent money from Queens, New York to Columbia and South

18    America; that when you sent that money, you knew that the

19    money came from criminal activity; and you knew when you

20    sent the money that not only was it criminal proceeds but

21    that by sending the money in the form that you did you were

22    protecting the criminals by concealing their ownership or

23    involvement with the funds.

24         The government would, in addition, if this case

25    were to proceed to trial, be required to prove that not only

1    were these funds the proceeds of criminal acts but that the

2    criminal acts that generated the money included drug

3    dealing.

4           Do you understand what you're accused of in this

5    indictment?

6           THE DEFENDANT:  Yes.

7           THE COURT:  I know your lawyer is helping you

8    formulate your answers to my questions but it's very

9    important that you yourself understand what I'm asking you

10   and answer based upon your own understanding.  So I want to

11   make sure, is that what's happening?

12          THE DEFENDANT:  Yes.

13          THE COURT:  I know you're probably a little

14   nervous and I'm sure your lawyer's assistance is helping you

15   stay calm, but I don't want it to overcome my ability to

16   make sure you understand what's happening.  Okay?  So, if

17   there's anything that I say that you're not sure you

18   yourself understand, you should feel very free to ask me or

19   ask to talk to Mr. Malerba about it.  Okay?

20          THE DEFENDANT:  Alright.

21          THE COURT:  Okay.  Now that you understand the

22   charge, I also want you to understand that you have the

23   right to plead not guilty to it.  Every defendant, whether

24   he is in fact guilty or not, has the right to plead not

25   guilty and ask for a trial.

1          Do you understand?

2          THE DEFENDANT:  Yes.

3          THE COURT:  If you plead not guilty, then under

4    the Constitution and laws of the United States, you are

5    entitled to a speed and public trial, by a jury, with the

6    assistance of your attorney on the charge pending against

7    you.

8          Do you understand?

9          THE DEFENDANT:  Yes.

10          THE COURT:  At your trial, you would be presumed

11    to be innocent.  The prosecution would be required to

12    overcome this presumption of innocence and to prove that you

13    are guilty by competent evidence and beyond a reasonable

14    doubt.  You would have no responsibility to prove your

15    innocence at your trial.  If the prosecution failed to prove

16    that you were guilty beyond a reasonable doubt, the members

17    of the jury would have the duty to return a verdict of not

18    guilty and Judge Johnson would so-instruct them.

19          Is that clear?

20          THE DEFENDANT:  Yes.

21          THE COURT:  That's why sometimes juries return

22    verdicts of not guilty even though the members of the jury

23    believe that the defendant probably committed the crime

24    charged in the indictment.  Probably is not enough for a

25    jury to convict a defendant.  So when a jury finds a

1  defendant not guilty, they don't have to be convinced he's

2  innocent.  They're oblige to returned a verdict of not

3  guilty unless they're convinced beyond a reasonable doubt

4  that he committed the charged crime.

5        Did you understand me?

6        THE DEFENDANT:  Yes.

7        THE COURT:  If you wanted to go to trial then,

8  during the course of your trial, the prosecutor's witnesses

9  would be required to come into the Courtroom and present

10  their testimony against you right in front of you and your

11  lawyer.  Your lawyer would have the right to question the

12  prosecution witnesses on cross-examination, your lawyer

13  would have the right to object to evidence the prosecution

14  attempted to offer against you and you and your lawyer

15  working together would have the right to call witnesses, put

16  on evidence and make arguments in your defense to the jury

17  during the trial.

18        Do you understand?

19        THE DEFENDANT:  Yes.

20        THE COURT:  At your trial, you yourself would have

21  the right to testify as a witness in your own defense if

22  that was the choice you made.  But no one could make you

23  testify at your trial against your will.  That is because

24  our Constitution says that no one may be required to say

25  anything self-incriminating.  If you decided you preferred

1   not to testify as a witness in your own defense at your

2   trial, Judge Johnson would instruct the jurors that they

3   couldn't hold that against you or consider it in any way

4   when they decided what their verdict should be.

5           Is that clear?

6           THE DEFENDANT:  Yes.

7           THE COURT:  On the other hand, if you offer a

8   guilty plea and Judge Johnson decides it should be accepted,

9   you will, as a result, be giving up your constitutional

10  right to a trial and all of the other rights I've told you

11  about today.  There will be no further trial of any kind in

12  your case and you will have no right to appeal from the

13  conviction that will be entered against you.  Judge Johnson

14  will essentially find you guilty based upon your admission

15  of guilty during the proceeding that we are holding right

16  now and that will free the prosecutor of any responsibility

17  to prove anything about what you've done.

18          Do you follow that?

19          THE DEFENDANT:  Yes.

20          THE COURT:  If you went to trial and you were

21  convicted by the jury's verdict, you would have a right to

22  ask the Court of Appeals to review the legality of all of

23  the proceedings that led to your conviction.  But when you

24  plead guilty, your conviction is based upon the words that

25  you personally chose to speak.  Under those circumstances,

1  there is no right of appeal from your conviction other than

2  a challenge to the legality of the proceeding we're holding

3  at this very moment.

4           Do you understand that?

5           THE DEFENDANT:  Yes.

6           THE COURT:  If you plead guilty, I'm going to ask

7  you questions about your involvement in transferring money

8  to Columbia, so that Judge Johnson and I can be satisfied

9  that your guilty plea is based upon real facts.  You don't

10  have to answer my questions unless you want to go forward

11  with your guilty plea.  But if you do answer my questions

12  and you admit your involvement in criminal activity, you

13  will be giving up your constitutional right not to say

14  anything self-incriminating.

15           Do you follow that?

16           THE DEFENDANT:  Yes.

17           THE COURT:  Do you want to give up your right to

18  trial and all the other rights I've been telling you about

19  today?

20           THE DEFENDANT:  Excuse me?

21           THE COURT:  Do you still want to give up your

22  right to trial and all the other rights that I've been

23  telling you about today?

24           THE DEFENDANT:  Yes.

25           THE COURT:  I want you to look at what's been

1  marked as Courts' Exhibit 1, which I understand is your plea

2  agreement.  It is not signed.  If you want to go forward and

3  this agreement is familiar to you, you can look at it with

4  your lawyer and sign it.  If you haven't been over this

5  document yet, we'll take a recess so that you have the

6  chance to do so.

7         MR. MALERBA:  Judge, it's signed.

8         THE COURT:  Oh, I apologize.  It's the assistant

9  who didn't sign it.

10        MS. KLAPPER:  It's signed on two different pages.

11 The government on one page, defense on the other.

12        THE COURT:  Oh, I saw the signature page for the

13 government.

14        MR. MALERBA:  Okay.

15        THE COURT:  Great.  Okay, hold on to it though

16 please.  Did you in fact sign this plea agreement, Court

17 Exhibit 1?  I'm sorry for the confusion.

18        THE DEFENDANT:  Yes.

19        THE COURT:  Before you signed it, was it read to

20 you in Spanish and did you understand what you were signing?

21        THE DEFENDANT:  Yes.

22        THE COURT:  Do you have any questions about your

23 agreement or anything it says that you want to ask me or

24 consult with your lawyer about?

25        THE DEFENDANT:  No.

1        THE COURT:  It's all clear to you?

2        THE DEFENDANT:  Yes.

3        THE COURT:  Do your written agreement with

4   prosecution, the document your lawyer is showing you now,

5   set out in writing, completely and accurately, everything

6   you've agreed to with the prosecution?

7        THE DEFENDANT:  Yes.

8        THE COURT:  Has anyone promised you anything in

9   return for pleading guilty that's not written down in there?

10       THE DEFENDANT:  No.

11       THE COURT:  Thank you, Mr. Yauri.  Now, Mr. Yauri,

12  do you recall the charge against you?

13       THE DEFENDANT:  Yes.

14       THE COURT:  I need to review with you the

15  penalties you face if you decide to plead guilty to that

16  charge.  The statute that you're accused of violating

17  authorizes a prison sentence that could be as long as twenty

18  years.

19       Do you understand me?

20       THE DEFENDANT:  Yes.

21       THE COURT:  In addition, the statute authorizes a

22  term of supervised released that could be as long as three

23  years.

24       Do you understand that?

25       THE DEFENDANT:  Yes.

1       THE COURT:  Supervised release is a period of time

2   that only starts to run once you've finished serving what

3   ever prison sentence is imposed.  At that point, you'll be

4   released from physical custody but you won't be entirely

5   free because you will have to follow the rules of supervised

6   release.

7       If you remain in the United States, there will be

8   many rules, more than I can list for you, including, but not

9   limited to, restrictions on your right to travel and

10  requirements that you regularly report to a probation

11  officer, that you follow the officer's quest -- officer's

12  instructions and answer the officer's questions.

13      Whether you remain in the United States or not, it

14  will be a condition of your supervised release that you

15  commit no new crimes at all.  And if you break any

16  supervised release rule at all, whether in doing so you've

17  committed a new crime or not, you could be arrested and

18  brought back to this Court, where you could be sentenced to

19  a new term of imprisonment of up to two years on this money

20  laundering charge, with no credit for the time you spent

21  serving your original sentence.

22      Do you understand?

23      THE DEFENDANT:  Yes.

24      THE COURT:  You could be fined as much as five

25  hundred thousand dollars or twice the amount of money you

1  sent to Columbia, whichever is greater.

2          Do you understand?

3          THE DEFENDANT:  Yes.

4          THE COURT:  You will be required to make a one

5  hundred dollar special assessment payment at or about the

6  time you are sentenced.

7          Do you understand?

8          THE DEFENDANT:  Excuse me?

9          THE COURT:  You will have to make a one hundred

10 dollar payment at the time you're sentenced.  Is that clear?

11         THE DEFENDANT:  A hundred dollars?

12         THE COURT:  Yes.

13         THE DEFENDANT:  Okay.

14         THE COURT:  And, finally, you could be deported

15 simply based upon your guilty plea.  And if the government

16 seeks to deport you, you won't be allowed to say that you

17 didn't launder money because if you admit it here to me

18 today, that will be binding upon you in all future legal

19 proceedings, including any that might be held to decide

20 whether you have a right to stay in the United States or

21 ever come back here.

22         Do you understand that?

23         THE DEFENDANT:  Yes.

24         THE COURT:  Now, I then want to turn your

25 attention to what we call the sentencing guidelines.  These

1  guidelines will be calculated by Judge Johnson and will

2  provide him with a range of months that the law will

3  strongly suggest is the appropriate sentence for your case.

4         Have you talked to your attorney about these

5  guidelines and how Judge Johnson is likely to calculate

6  them?

7         THE DEFENDANT:  Yes.

8         THE COURT:  The prosecutor estimates that Judge

9  Johnson will decide upon a guideline range of 24 to 30

10 months, assuming that the condition precedent in paragraph

11 seven has been satisfied.

12         MS. KLAPPER:  It has been satisfied, your Honor.

13         THE COURT:  Thank you.

14         That's just an estimate, it is not binding on

15 Judge Johnson.  He's going to make his own guidelines

16 calculation.  He won't do that until he receive something we

17 call a presentence report.  The report has not been written.

18 Once it's ready, you'll be allowed to read it with your

19 lawyer, you will have an opportunity to address Judge

20 Johnson, you can tell him if anything in the report is

21 unfair or wrong in your view and, at that point, Judge

22 Johnson will make his own calculation of the guidelines.

23 It's possible he will decide on a longer guideline range

24 than the one the government has estimated.

25         Is that clear?

1  THE DEFENDANT:  Yes.

2  THE COURT:  Even after the judge calculates the

3  guideline, he will retain the right to decide that a

4  sentence longer or shorter than the guideline range is more

5  appropriate in your particular case.

6  Is that clear?

7  THE DEFENDANT:  Yes.

8  THE COURT:  If your sentence of incarceration is

9  33 months long or less, you will have no right to appeal

10  from any aspect of this case even if your sentence is longer

11  than 33 months in prison, you will not be permitted to

12  change your mind about pleading guilty or to appeal from

13  your conviction.  The only right you will have will be to

14  appeal from the length of the prison sentence you will

15  receive.

16  Do you understand that?

17  THE DEFENDANT:  Yes.

18  THE COURT:  There is no parole in Federal prison.

19  If you have heard of parole and you expect to be released

20  early from your sentence on parole, you're mistaken.  You

21  will not get out early on parole from a Federal sentence.

22  Do you understand that?

23  THE DEFENDANT:  Yes.

24  THE COURT:  Now, do you have any questions you

25  would like to ask me or discuss with Mr. Malerba about your

1    rights, the penalties you face, the charge against you or

2    anything else concerning this matter?

3              THE DEFENDANT:  No.

4              THE COURT:  Is everything I've said to you clear?

5              THE DEFENDANT:  Yes.

6              THE COURT:  Are you ready to enter your plea?

7              THE DEFENDANT:  Yes.

8              THE COURT:  Mr. Malerba, do you know of any reason

9    why your client should not plead guilty to the charge

10   pending against him?

11             MR. MALERBA:  There is no reason, Judge.

12             THE COURT:  Mr. Yauri, with respect to this money

13   laundering charge, how do you plead, guilty or not guilty?

14             THE DEFENDANT:  Guilty.

15             THE COURT:  Do you make this guilty plea

16   voluntarily and of your own free will?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Have you been threatened or pressured

19   by anyone to offer this guilty plea?

20             THE DEFENDANT:  No.

21             THE COURT:  Have you been promised anything by

22   anyone other than what's written in your plea agreement in

23   return for pleading guilty?

24             THE DEFENDANT:  No.

25             THE COURT:  Has anyone promised you what sentence

1   Judge Johnson will decide to set?

2           THE DEFENDANT:  Excuse me?

3           THE COURT:  Did anyone promise you what specific

4   sentence Judge Johnson will decide to set?

5           THE DEFENDANT:  No.

6           THE COURT:  What did you do that makes you guilty

7   of this crime?

8           THE DEFENDANT:  How can I say this?

9           THE COURT:  Okay, let me ask you some questions,

10  okay?  Did you live or work in Queens, New York between 2003

11  and 2006?

12          THE DEFENDANT:  Yes.

13          THE COURT:  During that period of time, did you

14  work at a money changing business?

15          THE DEFENDANT:  Yes.

16          THE COURT:  During that time, did you send money

17  to Columbia in South America?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Did there come a time when you became

20  aware that some of the money you were being asked to send to

21  Columbia was the proceeds of criminal activity?

22          THE DEFENDANT:  Yes.

23          THE COURT:  When did you become aware of that?

24          THE DEFENDANT:  In 2006.

25          THE COURT:  Did you continue to send the money to

1  Columbia even though you knew the money had been generated

2  by criminal conduct?

3          THE DEFENDANT:  Excuse me?

4          THE COURT:  Did you agree to send the money to

5  Columbia even after you knew that the money came from

6  committing crimes?

7          THE DEFENDANT:  Yes.

8          THE COURT:  When you sent that money to Columbia,

9  did you send -- did you understand that by working as a

10 money changer and transmitting the money for the criminals,

11 you were hiding or helping them hide their connection to the

12 money?

13         THE DEFENDANT:  Yes.

14         THE COURT:  What would the government's proof at

15 trial be that the money was actually the proceeds of drug

16 dealing?

17         MS. KLAPPER:  Your Honor, I would ask you to ask

18 the defendant one other question.  While it's not an element

19 of offense, it is an element to the guideline calculation.

20 Would you ask the defendant whether he was aware, based on

21 the statements made by the individual bringing him the

22 money, the source of the funds who was drug trafficking?

23         MR. MALERBA:  Judge, that's not part of this.  Why

24 would you ask that?

25         THE COURT:  Well, Ms. Klapper says it's relevant

1    to the guidelines calculation.

2            MS. KLAPPER:  By the way, if the defendant is not

3    willing to allocute to that, we don't have a plea agreement.

4    The plea agreement requires that allocution --

5            THE COURT:  Can you point me to the provision?

6            MS. KLAPPER:  Yes, your Honor.

7            THE COURT:  Thank you.

8            MS. KLAPPER:  There is -- the government's

9    position has always been, and it's quite a shock to me that

10   Mr. Malerba is raising this now because twenty minutes

11   before your Honor took the bench, he was willing to tell his

12   client to admit it was from drug proceeds.  But the

13   government's agreement to the global plea is conditioned

14   upon the guidelines calculation at page two and there is an

15   enhancement plus knowledge of belief or belief that funds

16   from narcotic proceeds and (ui) for an enhancement.

17           If the defendant is not willing to acknowledge

18   that the funds are the proceeds of drug trafficking, we do

19   not have a plea agreement and we do not give the defendant

20   the two points for a global plea.

21           MR. MALERBA:  Your Honor, I withdraw the objection

22   based on what the prosecution says, but certainly based on

23   what I see here.

24           THE COURT:  Here meaning on page two of the plea

25   agreement?

1          MR. MALERBA:  Yes, just where she indicated.

2          THE COURT:  Okay.  Mr. Yauri, when you sent the

3    money to Columbia, did you know that the -- or believe that

4    the money was the proceeds of drug dealing?

5          THE DEFENDANT:  Yes.

6          THE COURT:  Anything further you'd have me

7    inquire?

8          MS. KLAPPER:  No, your Honor.

9          THE COURT:  Based on the information provided to

10   me, I find that the defendant is acting voluntarily, fully

11   understands his rights and the consequences of his plea of

12   guilty.  I further find that there is a factual basis for

13   the guilty plea and I therefore recommend that Judge Johnson

14   accept the plea of guilty.

15         I understand that sentencing will be set by

16   Probation.  Between now and the sentencing date, you'll be

17   interviewed by a probation officer for the purpose of

18   preparing a presentence report.  I urge you, Mr. Yauri, to

19   be cooperative and candid during the interview.

20         I assume bail is to be continued?

21         MS. KLAPPER:  Yes, your Honor.  You had asked me a

22   question, which was what would the government's proof be

23   that the funds were actually from narcotics trafficking.

24   And were the matter to go to trial, the government would

25   present the testimony of confidential informants and

1   undercover agent who actually picked up the money in the

2   Street and was told that it was the proceeds of drug

3   trafficking.

4           THE COURT:  Thank you, Ms. Klapper, Mr. Malerba.

5   Enjoy your weekend everybody.

6           MR. MALERBA:  Thank you.

7           *  *  *  *  *  *  *  *  *  *  *  *  *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18      I certify that the foregoing is a correct transcript

19  from the electronic sound recording of the proceedings in

20  the above-entitled matter.

21

22

23

24

25  ELIZABETH BARRON                    July 17, 2007